UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 12-180 (BAH) |
| HENRY ALEJANDRO GOLDBERG *a/k/a* ROBERT RASON HENRY (BOP Name), | Chief Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Upon consideration of the defendant's Motion for Compassionate Release ("Def.'s Mot."), ECF No. 59, the memoranda submitted in support and opposition, and the entirety of the underlying record, the defendant's motion is **DENIED** for the reasons set out below.

I.     BACKGROUND

In 2012, the defendant pled guilty to one count of Persuading or Coercing to Travel to Engage in Sexual Activities for Which a Person Can be Changed with a Criminal Offense in violation of 18 U.S.C. § 2422(a), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(5)(B). Plea Agreement at 1, ECF No. 13. These charges stemmed from the defendant's online communications, between April 26, 2012 and May 17, 2012, with an undercover police officer ("UC"), in which communications the defendant both arranged to have sexual relations with the UC's purported 12 year-old daughter and also sent the UC pornographic images and videos featuring children between the ages of two and eleven. Gov't's Opp'n to Def.'s Mot. for Compassionate Release ("Gov't's Opp'n"), at 1–4, ECF No. 62; Final Presentence Investigation Report ("PSR"), ¶¶ 12–21, ECF No. 18. The defendant was arrested

after he had traveled to this district to a prearranged location to meet the UC's promised child. PSR ¶¶ 15, 20.

On December 13, 2012, the defendant was sentenced to 135 months' imprisonment on count one, and 120 months' imprisonment on count two, with the two terms to run concurrently. Judgment and Commitment Order, at 3, ECF No. 35; Min. Entry (Dec. 13, 2012). This sentence was the minimum period recommended by the applicable guideline range of 135 to 168 months' incarceration. PSR ¶ 131; *see also* Statement of Reasons at 1, ECF No. 36.

Shortly after his sentencing, on January 11, 2013, the defendant, proceeding *pro se*, sought reconsideration of his sentence, arguing, in part, for a downward departure under a United States Sentencing Commission, *Guidelines Manual*, policy statement, U.S.S.G. § 5H1.6, governing departures for "Family Ties and Responsibilities," on the grounds that the defendant was, as he again argues here, the "caretaker" for his elderly parents. *See* Def.'s Mot. for Reconsideration and Request for a Downward Departure From Sentencing Guidelines ("Def.'s Reconsideration Mot."), at 2–4, ECF No. 40. Reconsideration was denied because the referenced policy statement does not apply to defendants, who, as here, were convicted of offenses under, *inter alia*, chapters 110 or 117 of Title 18, United States Code. *See* Mem. Op. & Order (Feb. 12, 2013) ("Reconsideration Order"), at 2, ECF No. 41.[1]

---

[1] The defendant also sought reconsideration because his sentence was incorrectly "based upon" his written confession to having engaged in the offense of Rape, 2d Degree, Def.'s Reconsideration Mot. at 5, a charge that was pending in another jurisdiction at the time of his sentencing in this case, PSR ¶ 68. This charge arose from the defendant's admitted sexual relations in November 2011 with 13-year old girl, who became pregnant. *Id*; *see also United States v. Henry*, 758 F.3d 427, 430 (D.C. Cir. 2014) ("At some point before the signing of the plea agreement, the prosecutor asked Henry whether he had had any hands-on sexual contact with children, which Henry denied. But that was unfortunately not the case. In November 2011—before he was arrested in this case—Henry, then 22, had traveled from the District of Columbia to Prince George's County, Maryland and had sex with a 13-year-old girl he met on Facebook. When Maryland officials later interviewed Henry about the incident, he confessed that he had had sex with the girl, but protested that he thought she was close to 15 years old at the time. Maryland officials filed a detainer for second degree rape of a minor in mid-July of 2012, after Henry's arrest in this case and the drafting, but not the signing, of the plea agreement."). This ground for reconsideration of his sentence was also rejected. Reconsideration Order at 3 (noting that "[t]he Commentary to U.S.S.G. § 2G2.2(b)(5) expressly states that the instances of sexual abuse or sexual exploitation of a minor by the defendant may be considered as part

Over seven years after the original sentence was imposed, the defendant, proceeding *pro se*, submitted a letter, dated January 10, 2020, to the Court requesting compassionate release and permission to serve the remainder of his sentence on home confinement, which letter has been construed as a motion for compassionate release under the First Step Act. *See generally* Def.'s Mot. The defendant expresses sincere remorse for his actions, as well as a desire to help others and law enforcement in preventing the kinds of crimes for which he was arrested. *Id*. at 2–3. He also attests to his own moral reformation while in prison, which he largely attributes to his newfound faith and conversion to Judaism. *Id*. The defendant's change of name from Robert Rason Henry to Henry Alejandro Goldberg reflects his stated desire to begin a new life as "a valuable contributing member of society." *Id*. at 3.

The defendant's primary basis for requesting compassionate release is his desire to help care for his elderly parents, who are "in their mid 80's and are suffering diminishing health associated with advanced age." *Id*. at 3. To help his parents, the defendant asks for "the mercy of the court" to be "allowed to serve the remainder of my sentence on home confinement or any option available to the discretion of the court to give me access to care for them on a daily basis." *Id*. at 4. Accompanying the defendant's motion are letters of support from the defendant's brother, sister-in-law, and mother, as well as medical records documenting his mother's multiple health issues. Def.'s Mot., Exs. 2–8, ECF Nos. 59-2–59-8. Separately, the defendant's father also submitted a letter of support confirming that he and his wife "are in our eighties and in extremely poor health." Letter of Leniency for Henry Goldberg, ECF No. 63.

---

of the 'pattern of activity' under this SOC, 'whether or not the abuse or exploitation . . . resulted in a conviction for such conduct.' U.S.S.G. § 2G2.2, comment. (n.1).").

## II. LEGAL STANDARD

The First Step Act of 2018, enacted on December 21, 2018, among other things, amended 18 U.S.C. § 3582(c), which addresses "[m]odification of an imposed term of imprisonment." *See* First Step Act, Pub. L. 115-391, §603(b). Section 3582(c) generally bars a court from "modify[ing] a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), except for specified exceptions, including upon a motion by the Director of the Bureau of Prisons ("BOP") for a sentence reduction. *See United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006) (noting "that Congress has, in language with a somewhat jurisdictional flavor, limited district court authority to *modify* sentences""). Section 603(b) of the First Step Act expanded this exception to authorize a defendant to move directly in court for a sentence reduction after having "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). To ensure accessibility to this remedy, the First Step Act further directs that "all Bureau of Prisons facilities regularly and visibly post … and make available to prisoners upon demand, notice of … a defendant's ability to request a sentence reduction pursuant to" § 3582(c)(1)(A), as well as "the procedures and timelines for initiating and resolving" such requests and "the right to appeal a denial of a request … after all administrative right to appeal within [BOP] have been exhausted." *Id.* § 3582(d)(2)(C).

The First Step Act left intact the original statutory restrictions in § 3582(c)(1)(A) on resolving motions for compassionate release submitted by BOP, and those restrictions now also govern motions filed by defendants after exhausting BOP's administrative process. Specifically, in resolving a compassionate release motion, the court may reduce a term of imprisonment "after

considering the factors set forth in section 3553(a) to the extent that they are applicable," *id*. § 3582(c)(1)(A), and upon making two findings: first, that "extraordinary and compelling reasons warrant such a reduction," *id*. § 3582(c)(1)(A)(i);[2] and, second, "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id*. § 3582(c)(1)(A).[3]

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended by the Sentencing Commission on November 1, 2016, applies to motions for reduction of terms of imprisonment under § 3582(c)(1)(A), and provides guidance as to both of the required findings under this statutory provision.[4] Generally tracking the statutory language, U.S.S.G. § 1B1.13 states that reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A) and (B); (2) the defendant poses no danger to the safety of any other person or the community, *id*. § 1B1.13(2); and (3) "the reduction is consistent with this policy statement,"

---

[2] In addition to "extraordinary and compelling reasons," the court may find a sentence reduction warranted for a defendant who is "at least 70 years of age" and has served at least 30 years in prison, when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii).

[3] Pertinent to the second finding, the Sentencing Commission is expressly tasked in its organic statute with promulgating general policy statements regarding "the sentence modification provisions set forth in section[] … 3582(c) of title 18," 28 U.S.C. § 994(a)(2), and "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," *id*. § 994(t).

[4] U.S.S.G. § 1B1.13 has not been updated since the enactment of the First Step Act, due to the lack of a voting quorum on the U.S. Sentencing Commission. *See* U. S. Sentencing Commission, *2019 Annual Report,* at 3 (2019) (explaining that '[t]hroughout much of fiscal year 2019 and into fiscal year 2020 … the Commission has lacked the minimum of four affirmative votes required by statute to promulgate amendments to the federal sentencing guidelines…"). Consequently, this policy statement is framed to provide guidance in resolving a "motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," U.S.S.G. § 1B1.13. Nonetheless, this policy statement provides guidance in resolving compassionate release motions filed directly by defendants and must be considered to ensure any reduction is at least "consistent with" this applicable policy statement. 18 U.S.C. § 3582(c)(1)(A).

*id*. § 1B1.13(3). The commentary to this policy statement then describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction": (1) the medical condition of the defendant, who "is suffering from a terminal illness" or has a chronic and "substantially diminish[ed] [] ability… to provide self-care" within the prison environment, *id*. § 1B1.13, cmt. n.1(A)(i)-(ii); (2) the age of the defendant is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less," *id*. § 1B1.13, cmt. n.1(B); (3) "Family Circumstances" of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner," *id*. § 1B1.13, cmt. n.1(C); and (4) "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, *id*. § 1B1.13, cmt. n.1(D).

## III. DISCUSSION

The government opposes the defendant's motion for compassionate release, contending that he fails to qualify for compassionate release, under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, because he failed to exhaust administrative remedies and, additionally, he has not demonstrated "extraordinary and compelling reasons" for early release or shown that "an analysis of the [Section] 3553(a) factors" warrants a sentence reduction. Gov't's Opp'n at 5.

The government is correct that, on the current record, the defendant has failed to show proper exhaustion of his administrative remedies before seeking judicial intervention for compassionate release, as required under 18 U.S.C. § 3582(c)(1)(A). His original letter makes no reference to presenting his compassionate release request to BOP for consideration. In a

supplementary letter, dated January 27, 2020, the defendant attached a document, dated December 7, 2019, that he describes as relaying information about "whether I can earn good time days under the First Step Act and it also includes my recidivism risk level." Def.'s Letter at 2, ECF No. 63. The brief half-page attachment purportedly from BOP's "LSCI Butner" reflects only a circled word "Ineligible" next to "First Step Act," and a circled word "Low" next to "Recidivism Risk Level." *Id*. at 3. Nothing in this supplementary submission or the defendant's original letter indicates that he has petitioned BOP to review his case and move on his behalf for compassionate release under the First Step Act, and that his petition was denied. Thus, on the current record, the defendant has not shown that he has satisfied the statutory exhaustion requirement in § 3582(c)(1)(A).

Even if the defendant had exhausted his administrative remedies, his motion would still be denied because he has fallen short of showing "extraordinary and compelling reasons" warranting compassionate release. The defendant cites his own personal reformation, including his religious conversion to Judaism, and his family circumstances due to the declining health of his elderly parents as warranting his reduction of sentence. These attestations to the defendant's new approach to living his life reflect positive and constructive changes. Nonetheless, the Sentencing Commission's applicable policy statement makes clear that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" warranting a sentence reduction. U.S.S.G. § 1B1.13, cmt. n.3 (citing 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence modification under § 3582(c)(1)(A))). A sentence reduction on this basis would therefore not be "consistent with applicable policy statements issued by the Sentencing Commission," as required by § 3582(c)(1)(A).

7

Moreover, the family circumstances that would amount to an extraordinary and compelling reason are strictly circumscribed under the policy statement and do not encompass providing care to elderly parents. Instead, the family circumstances that may be considered an adequate reason for a sentence reduction are limited, as noted *supr*a Part II, to the need to care for the defendant's minor children or a spouse or registered partner, when no other caregiver is available. *See id*. § 1B1.13, cmt. n.1(C). While certainly admirable, a desire to help care for one's elderly parents does not qualify as an "extraordinary and compelling reason" for release under U.S.S.G. § 1B1.13, nor, therefore, under 18 U.S.C. § 3582(c)(1)(A)(i). After all, "[m]any, if not all inmates, have aging and sick parents." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (denying compassionate release motion to care for defendant's ill mother). Even if the policy statement could be stretched in some circumstances to cover a defendant's elderly parents, a critical consideration in this guidance is that no person other than the defendant is available to serve as a caretaker of a minor or incapacitated immediate family member. As the government points out here, the record indicates that other family members—namely the defendant's brother and sister-in-law—are available to help care for the defendant's parents. Gov't's Opp'n at 6.

This Court declines to adopt the view of some courts that U.S.S.G. § 1B1.13 may be eschewed as outdated. *See, e.g*., *United States v. Redd*, No. 1:97-cr-6, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) (finding that courts may consider "extraordinary and compelling reasons based on facts and circumstances other than those set forth in U.S.S.G. §1B1.13 cmt. n.1(A)-(C)"); *United States v. Young,* No. 2:00-cr-2, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]istrict courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release."); *United States v. Maumau,*

No. 2:08-cr-758, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (concluding that the court "has the discretion to provide [the defendant] with relief, even if his situation does not fall directly within the Sentencing Commission's current policy statement."); *United States v. Beck*, No. 1:13-cr-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("An interpretation of the old policy statement as binding on the new compassionate release procedure is ... inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BoP finds they are not appropriate."). To the contrary, given the plain text of § 3582(c)(1)(A), which requires a finding that any sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," the limitations in U.S.S.G. § 1B1.13 apply and are binding. *See, e.g., United States v. Ebbers*, No. 02-cr-1144-3, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current, even if references to the identity of the moving party are not."); *United States v. Shields*, No. 12-cr-410, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019) (finding no "authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments."); *United States v. Lynn*, CR No. 89-72, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019) (finding "the Court must follow the policy statement as it stands").

In addition to the plain text of § 3582(c)(1)(A), this conclusion is bolstered by the fact that, in amending this statutory provision to authorize motions by defendants, no change was made to the requirements for granting a sentence reduction. Although the current language of the policy statement was adopted before the enactment of the First Step Act, the November 2016 amendment was made after "an in-depth review" by the Sentencing Commission, "including

9

consideration of Bureau of Prisons data documenting lengthy review of compassionate release applications and low approval rates, as well as two reports issued by the Department of Justice Office of the Inspector General that [were] critical of the Bureau of Prisons' implementation of its compassionate release program." U.S.S.G. Supp. To App. C (Nov. 1, 2018) Reason for Amendment 799, at 127, 81 Fed. Reg. 27,261, 27,263 (May 5, 2016) (citing U.S. Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*, I-2023-006 (Apr., 2013); U.S. Dep't of Justice, Office of the Inspector General, *The Impact of the Aging Inmate Population on the Federal Bureau of Prisons*, E-15-05 (May, 2015)). The amended policy statement "broadens the Commission's guidance on what should be considered 'extraordinary and compelling reasons' for compassionate release," *id*., and encourages BOP to file appropriate motions for sentence reductions, given "the inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility," *id*. at 128. In short, the aims of the amended, current policy statement appear fully consistent with those of the First Step Act, which contains no indication that Congress intended to repudiate U.S.S.G. § 1B1.13 a mere two years after approving the November 1, 2016 amendment thereto.

**IV.     ORDER**

For the foregoing reasons, the defendant has not shown that he administratively exhausted his request for compassionate release or presented an "extraordinary and compelling reason" for a sentence reduction, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is hereby

**ORDERED** that the defendant's Motion for Compassionate Release, ECF No. 59, is **DENIED**.

**SO ORDERED.**

Dated: April 13, 2020

_____
BERYL A. HOWELL
Chief Judge